UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

STEPHEN "MARSHALL" WILSON, as an
Independent Candidate
for Governor of West Virginia and
in his Individual Capacity,

CASE NO. 2:20-cv-00526

Plaintiff,

vs.

HONORABLE _____

JIM JUSTICE, Governor of West
Virginia, in his Official Capacity, and
MAC WARNER, Secretary of State
for West Virginia, in his Official
Capacity,

Defendants.

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff, Stephen "Marshall" Wilson, in his capacity as an independent candidate for Governor of West Virginia and as a registered voter in West Virginia, files this Complaint against Defendants Jim Justice, Governor of West Virginia and Mac Warner, Secretary of State of West Virginia, in their official capacities (hereinafter known as "Defendants").

### Summary of this Civil Action

1. Marshall Wilson alleges that West Virginia's ballot access procedure in combination with Governor Justice's March 23, 2020 Executive Order No. 9-20 (the "Stay Home Order") attached as Exhibit No. 1, violates rights guaranteed to him by the First and Fourteenth Amendments of the United States Constitution.

2. Wilson, who is running for Governor of West Virginia as an independent candidate not affiliated with the major parties, filed his statement of candidacy on August 3, 2020. Wilson is an independent member of the West Virginia's House of Delegates and

currently lives in Berkeley County, West Virginia. Wilson meets every qualification for a candidate for Governor and has lived in West Virginia long enough to be resident for purposes of the statutory requirement for Governor of the State of West Virginia.

3. Pursuant to West Virginia election law, for a candidate unaffiliated with a major recognized party in West Virginia to have his/her name placed on a General Election ballot, W. Va. Code §§ 3-5-23 and 3-5-24 the candidate must have strict compliance with several chronological steps outlined in the statutes.

4. First, said candidate must obtain permission (hereinafter "official credentials") from the fifty-five (55) county clerk(s) to gather signatures in each county where the candidate seeks ballot access. For statewide candidates, that person must seek and be granted official credentials in all 55 counties.

5. Second, the candidate or designee solicits signatures from registered voters in each jurisdiction.

6. The person soliciting signatures must "exhibit" the official credentials to each voter solicited.

7. The voter solicited must sign or "be personally signed" by the voter "in their own proper handwriting." In other words, it must be an original "wet" signature from the prospective voter to be proper under the statute.

8. The total amount of signatures required for ballot access is equal to 1% of the total votes cast for the office sought in the previous election or in Mr. Wilson's case he must have seven thousand two hundred (7,200) signatures to satisfy the statutory requirement.

9. Signature petition pages are provided to each county clerk to confirm the voters are (1) registered to vote in the county, and (2) the petition signatures match each voters' signature on file.

10. Finally, upon confirming signatures are valid and the candidate satisfied the threshold signature amount requirement, each county moves forward with certifying the candidate's name for placement on the General Election ballot.

11. This process is time consuming at best. However, the SARS-CoV-2 virus ("COVID-19") epidemic has added delay to an already lengthy process.

12. Candidates, like Wilson, unaffiliated with a major recognized political party in West Virginia must follow the signature-gathering petition process set forth in W. Va. Code § 3-5-23 *et seq.* to be placed on a General Election ballot. However, Wilson's candidacy has been severely limited in his in-person signature gathering because of the COVID-19 pandemic and the Governor's response to the pandemic through his Executive Orders. With COVID-19 posing a threat to the public health, the in-person signature-gathering process places the general public's health at risk and creates an unconstitutional burden on Wilson and other candidates not affiliated with West Virginia's major parties to satisfy the requirements for candidacy for the Office of Governor.

13. Pursuant to Governor Justice's Stay Home Order, and in light of a global pandemic, West Virginia residents were required to stay in their homes until at least May 4, 2020. All public gatherings were prohibited. Additionally, workers who are deemed essential and permitted to leave their homes must maintain a distance of six feet from other people.

14. Wilson and several volunteers were diligently collecting signatures prior to the issuance of the Stay Home Order. Although Wilson has collected a substantial number of signatures from qualified and registered electors, Wilson estimates has not yet obtained enough signatures to meet the statutory threshold to have his name placed on the November 3, 2020 General Election ballot.

15. Through the enforcement of West Virginia election law in conjunction with the Stay Home Order, Defendants have effectively precluded Wilson and other similarly situated independent candidates throughout the state from qualifying to have their name on the November 3, 2020 General Election ballot. The signature requirement placed on independent candidates coupled with the months of delay created by COVID-19 and the Stay Home Order issued by the Governor unjustifiably and unconstitutionally interfered with Wilson's First Amendment right to Free Speech and Assembly and his Fourteenth Amendment rights individually as a voter in West Virginia's General Election.

16. Defendant Warner's Office has indicated the candidates to be placed on the November 3, 2020 General Election ballot will be transmitted to the fifty-five (55) County Clerks on August 31, 2020. That date will be strictly enforced. The last date to appear and present the Secretary of State with the required number of signatures to appear on the General Election ballot as an independent candidate is August 3, 2020.

17. Per Defendant Warner's Office, if the independent candidate does not have the required number of signatures by August 3, 2020, he/she will be denied access to have his/her name placed on the November 3, 2020 General Election ballot. Notwithstanding that the Governor and the Secretary of State have the power to extend the deadline for the acceptance of signatures or relax the requirement for the number of signatures required, and notwithstanding that Wilson on three separate occasions asked for relief from the Secretary of State's Office and the Governor's Office because the Stay Home Order and COVID-19 was interfering with his signature collection for the gubernatorial election.

18. Defendants' refusal to extend the August 3, 2020 deadline for official credentials and signatures for appearing on the General Election ballot or relax the signature requirement needed to make the General Election ballot places independent candidates in

an unreasonable position. Candidates and their teams either have to break the law and cause electors to break the law under threat of criminal prosecution or face possible infection by the pandemic, or forgo running for public office altogether.

19. Wilson seeks prospective declaratory relief and injunctive relief as necessary to ensure his placement on West Virginia's General Election ballot. In support of this Complaint, Wilson submits his Declaration (Exhibit No. 2).

### The Parties, Jurisdiction, and Venue

20. Wilson resides in West Virginia and files suit in his capacity as an independent candidate for Governor and as a registered voter in West Virginia. Wilson has filed his Statement of Candidacy with the Secretary of State on August 3, 2020. Further, Wilson is a registered voter in Berkeley County, West Virginia and he has consistently voted in past primary and General Elections.

21. Defendant Jim Justice is the West Virginia Governor. Governor Justice has authority over the enforcement of the West Virginia Election Code during a state of emergency and otherwise. Wilson asserts claims against Governor Justice in his official capacity only. Governor Justice's official address is Office of the Governor, State Capitol, 1900 Kanawha Boulevard, E., Charleston, West Virginia 25305.

22. Defendant Mac Warner is the West Virginia Secretary of State. Secretary Warner is the State's chief elections official and has ultimate authority over the enforcement of the West Virginia Election Code, including the provisions challenged herein. Wilson asserts his claims against Secretary Warner in his official capacity only. Secretary Warner's official address is Office of the Secretary of State, State Capitol Building, Charleston, West Virginia 25305.

23. Venue is proper in this Court because Wilson is a resident of West Virginia, and because the Defendants are state officials who maintain offices throughout the State of West Virginia. This Court has personal jurisdiction over the Defendants because they are public officials of the State of West Virginia and they are residents of West Virginia. This Court is a proper venue for this civil action under 28 U.S.C. § 1391.

24. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, because Wilson's claims arise under the First and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983.

25. Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, and Rule 65 of the Federal Rules of Civil Procedure.

## Allegations

26. Wilson is an independent candidate for the office of Governor of West Virginia.

27. On August 3, 2020, Wilson filed his statement of candidacy with the Secretary of State of West Virginia. Wilson also provided his official credentials and signatures to comply with the West Virginia statutory requirements.

28. For the General Election of 2020, as an independent candidate, Wilson was required to provide seven thousand two hundred (7,200) signatures or 1% of the number of voters in the previous election.

29. Wilson has a campaign staff and volunteers and has been diligently campaigning and collecting signatures since January of 2020.

30. Wilson and his campaign team implemented a plan to collect the required number of signatures early on in his campaign.

31. Wilson, his campaign team, and several volunteers and supporters have been working diligently, and have already collected an estimated six thousand five hundred (6,500) signatures for review by the Secretary of State as part of his official credentials.

32. Wilson and his team have been unreasonably and unconstitutionally delayed by the Governor's response to the COVID-19 epidemic, specifically the Stay Home Order.

33. It is undisputed that COVID-19 has had a substantial and far reaching effect on the State of West Virginia and the United States as a whole.

34. On or around March 15, 2020, President Trump rolled out his "15 days to slow the spread" initiative. This initiative, which was extended to April 30, 2020, asks people to practice social distancing and take other measures to prevent the spread of the novel COVID-19.

35. To comply with the federal initiative and protect West Virginia's citizens, Wilson and his campaign postponed some of its efforts to collect signatures.

36. On March 23, 2020, in his response to the COVID-19 pandemic, Governor Justice issued Executive Order 2020-21 the Stay Home Order. The Order went into effect On March 24, 2020 and remained in effect for forty-one (41) days or until May 4, 2020.

37. On April 30, 2020, Governor Justice issued the "Safer At Home" Order to take effect May 4, 2020, attached hereto as Exhibit No. 3. The Safer At Home Order did not require non-essential workers to stay home but still strongly encouraged all West Virginians to stay at home when not performing essential tasks. However, restrictions still remained on businesses and limited the number of people who could gather in groups.

38. Governor Justice's Stay Home Order, if construed broadly, made it illegal for any person to leave his/her residence unless that person is a worker "necessary to sustain or protect life or to conduct minimum basic operations" or essential worker.

39. The Stay Home Order further requires that essential workers who leave their homes must maintain social distancing standards by remaining at least six feet away from others.

40. The Stay Home Order did not create an exception for independent candidates or campaign volunteers seeking signatures so that said candidate can appear on the November 3, 2020 General Election ballot.

41. Wilson saw that the Stay Home Order was going to impact his ability to gather the required number of "wet signatures" needed for the acceptance of his candidacy by the Secretary of State. Wilson contacted the Secretary of State's Office on three separate occasions to seek an accommodation for his situation.

42. The first time Wilson contacted the Secretary of State, he asked if electronic signatures could be used instead of "wet signatures" because of the Governor's Stay Home Order and Safer At Home Order were hampering his ability to gather signatures for his candidacy around the State of West Virginia. Upon information and belief, he was told by the Secretary of State's Office that original signatures were required to comply with the statute and electronic signatures would not be counted.

43. The second time Wilson contacted the Secretary of State's Office he requested the date set by the Secretary of State to turn in the required signatures be postponed two weeks because the Governor's executive orders were unreasonably delaying his ability to gather the required signatures. Upon information and belief, the Secretary of State's Office forwarded Marshall's second request to the Governor's Office and that request was denied by the Governor's Office.

44. The third request made by Wilson to the Secretary of State's Office requested a relaxation on the number of signatures required to get on the ballot for the General

Election because the Governor's Executive Orders had unconstitutionally hampered Wilson's ability to gather the required signatures. Upon information and belief, like the previous two requests, Marshall's third request was forwarded to the Governor's Office where it was denied.

45. As stated in the Memorandum attached to this Complaint as Exhibit No. 4, the Secretary of State's Office is in favor of taking some sort of action to reduce the unconstitutional burdens placed on independent candidates by the pandemic and the Governor's Executive Orders. As stated in Exhibit No. 4, the conclusion to the Memorandum states as follows:

> The COVID-19 pandemic has created ballot access challenges for non-major party candidate in the 2020 General Election. In the public interest, some relaxation of existing petition requirements and their corresponding signature collection procedures may be necessary. Based on the vast majority of recent court decisions, the trend suggests that a legal challenge to West Virginia's current signature-gathering process under the COVID-19 pandemic would likely be successful. Acting now will reduce last-minute process changes at the county level, sooner remove the public health risks posed by candidates currently gathering signatures, and protect candidates' fundamental right to ballot access amid the current State of Emergency....
> Indeed, a reduction by 50% of the number of signatures required for a minor party candidate to gain ballot access is: (1) an equitable way to balance candidates' ballot access with the public interest of not having a confusing and overcrowded ballot, and (2) the least-disruptive alternative to WV's signature-gathering requirements.

46. The Secretary of State justified this conclusion by examining the issues facing independent candidates for Governor in this particular context and conducting a survey of sister states' responses to similar signature gathering procedures amid the pandemic. As the Secretary of State's Office rightly notes, several courts have held the fundamental right to ballot access and public safety outweigh current statutory signature requirements. There is a clear majority consensus among the various courts to relax or remove the signature-gathering process due to the risk to the public health for the 2020 election cycle.

47. The Secretary of State's Office highlighted case adjudicated on this issue where the Sixth Circuit Court of Appeals held, in part, that a reduction in the minimum number of signatures required for ballot access by half (50%) was warranted in the 2020 election cycle reasoning the candidate would suffer irreparable harm to his First Amendment Free Speech and Free Association rights, and the probability of harm to other and public interest weighed in favor of a preliminary injunction which reduces the signature threshold.

48. The Secretary of State's Office further explained to Governor Justice's Office that Governor Justice has wide latitude to issue Executive Orders during a State of Emergency. Indeed, Governor Justice has already issued Executive Orders effecting this election cycle. On April 1, 2020, Governor Justice issued an Executive Order moving the primary elections date from May 12, 2020 to June 9, 2020 because of concerns about COVID-19, attached to this Complaint as Exhibit No. 5.

49. Still, Governor Justice refuses to take any action whatsoever to protect and ensure the democratic election process, the very foundation of the republic and backbone of our government, in the gubernatorial race. His refusal is all the more inexcusable when he is well and uniquely aware of the tremendous toll the pandemic and social distancing will take on the elective process. Indeed, those same concerns about COVID-19 were the basis of moving the primary election and they have not diminished. Finally, as the spearhead of the West Virginia response to COVID-19, Governor Justice knows better than anyone the risk associated with contact between people gathering in person signatures.

50. However, neither COVID-19 nor the Governor's response to COVID-19 creates a loophole that allows the constitutional rights of independent candidates to be denied. Under these unprecedented circumstances, there is absolutely no compelling or legitimate

state interest to enforce the in-person signature requirement, and to do so is unconstitutional.

51. Collecting signatures is a time-consuming process, which requires close contact with electors who reside in the state.

52. Governor Justice's Stay Home Order has made an unconstitutional barrier for Wilson, and other independent candidates, to obtain the required number of signatures by August 3, 2020, the deadline imposed by the Secretary of State's Office.

53. The enforcement of that Deadline under these circumstances, considering the Stay Home Order, is unconstitutional because it imposes signature requirements upon Wilson and simultaneously strips him of the ability to meet those requirements.

54. This effectively prevents Wilson, through no fault of his own, from getting his name on the ballot and running for office in a meaningful way.

55. Over the last several months, Wilson has expended countless hours and other resources campaigning. The enforcement of the deadline and the in-person signature requirement severely injures Wilson and his supporters, and continues to impose severe burdens on him because, if it is enforced, he will not be placed on the General Election ballot for Governor of West Virginia.

56. Wilson, as well as his supporters, will be further injured and will suffer irreparable harm to their voting, speech, and associational rights because they will not be able to vote for the candidate of their choice if Wilson's name is not permitted to be on the ballot.

57. Defendants' enforcement of the deadline and in-person signatures will leave voters like Wilson forced to vote for the major party candidates in West Virginia or not vote

at all, and will serve to subvert our constitutional democracy by arbitrarily restricting their right to support and vote for the candidate of their choice.

### COUNT I - VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS (WEST VIRGINIA CODE §§ 3-5-23 AND 3-5-24 are unconstitutional as applied to Wilson as an Independent Candidate)

58. The preceding Paragraphs 1 - 57 are hereby incorporated by reference.

59. Considering the existence of an unprecedented viral pandemic and Governor Justice's Stay Home Order, the application and enforcement the August 3, 2020 deadline and in-person signature requirement are unconstitutional as applied to Wilson. Enforcement of the signature requirement by August 3, 2020, would require Wilson to collect 1% of the total votes cast for the office sought in the previous election, while simultaneously ordering Wilson and his team to stay home for a large portion of the same time.

60. Defendants' actions effectively prohibit Wilson from getting the required number of signatures, and in turn, prevent him from having his name placed on the November 3, 2020 General Election ballot as an independent candidate for Governor of West Virginia. Hence, Wilson's freedom of speech and association, equal protection, and due process rights as guaranteed by the First and Fourteenth Amendments, and as enforced by 42 U.S.C. § 1983 have been violated.

61. Defendants' enforcement of the statutory requirements in conjunction with the Stay Home Order make it virtually impossible for Wilson to get his name on the ballot without causing both himself and his supporters to violate the Stay Home Order and face potential criminal charges or sickness and possible death by contracting COVID-19. Under the circumstances, these requirements are burdensome, unreasonable, and are not narrowly tailored to meet any compelling or legitimate state interest.

62. These violations immediately injure Wilson and will continue to injure Wilson in the future in the absence of relief from this court.

COUNT II - VIOLATION OF FIRST AND FOURTEENTH AMENDMENT RIGHTS (WEST VIRGINIA CODE §§ 3-5-23 AND 3-5-24 are unconstitutional as applied to Wilson as an Registered Voter)

63. The preceding Paragraphs 1 - 62 are hereby incorporated by reference.

64. Wilson is a registered voter. He has consistently voted in past elections and has a constitutional right to effectively cast his vote.

65. Defendants' enforcement of the deadline hinders Wilson, individually, from the opportunity to choose among competing alternatives at the ballot, which would otherwise exist.

66. Wilson is immediately injured by these unconstitutional acts.

### Prayer for Relief

WHEREFORE, Wilson respectfully requests that this Honorable Court enter a judgment in his favor and against Defendants and grant the following relief:

A. Enter declaratory judgment holding that West Virginia Code §§ 3-5-23 AND 3-5-24 are unconstitutional as applied to Wilson as an independent candidate and in his capacity as a qualified voter;

B. Enter a temporary restraining order and/or preliminary injunction, and permanent injunction, barring Defendants from enforcing the deadline and/or signature requirements;

C. Enter an order requiring Defendants to either extend the deadline, decrease the signature requirements, or place Wilson's name on the ballot upon his

filing of the official credentials with fewer than the required number of signatures;

    D.       Award attorneys' fees pursuant to 42 U.S.C. § 1988; and

    E.       Award such other relief as the Court deems just and proper.


                                                  STEPHEN "MARSHALL" WILSON
                                                  By Counsel:

                                                  */s/ John J. Balenovich*

                                                  John J. Balenovich, Esq.
                                                  WV Bar No. 10179
                                                  John J. Balenovich Law Offices, LC
                                                  3818 MacCorkle Ave., S.E.
                                                  Charleston, WV 25304
                                                  Telephone:  (304) 925-2100
                                                  Fax:  (304) 925-2193
                                                  john@wvlitigator.com

Dated August 4, 2020