UNITED STATES DISTRICT COURT
SOURTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

MARSHALL WILSON, as an
Independent Candidate
for Governor of West Virginia and
in his Individual Capacity,

      CASE NO. 2:20-cv-526

   Plaintiff,

vs.      Honorable Thomas E. Johnston

JIM JUSTICE, Governor of West
Virginia, in his Official Capacity, and
MAC WARNER, Secretary of State
For West Virginia, in his Official
Capcity

   Defendants.

## PLAINTIFF'S REPLY BRIEF AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS

### Introduction

The case at bar is much more than a typical challenge to state election laws. This case is a challenge to state election laws and executive action that when applied together during an unprecedented world-wide pandemic operated to completely deprive Stephen "Marshall" Wilson (Wilson) of rights guaranteed him by the United States Constitution that are the very backbone of our form of government. Wilson unequivocally states that his rights as a candidate and as a voter have been severely burdened in violation of the First and Fourteenth Amendments, including the core First Amendment rights of free speech and free association, as well as the Equal Protection Clause. As applied, the combination of W. Va. Code §3-5-23, which specifically contemplates and regulates the in-person face-to-face solicitation AND canvassing of the electorate to obtain signatures to support a petition for an independent candidate's inclusion on the ballot; the Governor's various Executive Orders

promulgated pursuant to his emergency powers prohibiting and limiting interpersonal contact and assembly; and the Secretary of State's refusal to accept electronic signatures or relax the signature requirement worked together to deprive Wilson of rights guaranteed to him by the First and Fourteenth Amendments, as well as his rights as a voter and candidate.

### Laches is not a Defense in this Case

The first defense Defendants raise in their motion to dismiss and their memorandum is laches.  Laches is not applicable in this case because Wilson did not have a justiciable issue for the Court to decide before August 3, 2020.  Wilson did not have standing nor was the case ripe until he was denied a place on the General Election ballot.

A party has standing to sue if the party suffered an (1) injury in fact, (2) that is fairly traceable to the defendant's conduct, and (3) and said harm is likely to be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992).  The injury must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  *Id.* At 560.  Furthermore, the injury must be to some interest within the zone of interest to be protected and regulated, especially any interest protectable under the Constitution, statutes, regulations.  *Id.*

The issue in Wilson's case is ballot access, which is protected by the First Amendment, the Fourteenth Amendment, and the Equal Protection Clause.  Political interests gain standing *when impaired*, only then does political interests afford a basis for making constitutional attacks upon government action.  *Dept. of Commerce v. U.S. House of Representatives*, 525 U.S. 316 (1999).  If there is no impairment, there is no standing.

Defendants incorrectly argue Wilson should have taken action when Governor Justice issued his Stay Home Order (Exhibit 1).  Wilson did not have standing at that time because his injury was speculative and hypothetical.  Wilson's injury, for standing purposes, did not

become "concrete and particularized" until he was denied a spot on the ballot on August 3, 2020.

The case was not ripe until August 3, 2020 as well. A "claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998). Until Wilson was formally denied ballot access by the Secretary of State, Wilson's claim would have rested on "contingent future events." The case was not ripe until August 3, 2020.

### The Public Was Not Burdened by Wilson's Actions

Any burden or prejudice the government may suffer comes from their own inaction. Wilson requested on three separate occasions, over several months, for an accommodation from the Secretary of State based on the untenable reality of attempting to gather signatures during an unprecedented epidemic. The Defendants did nothing.

The doctrine of laches will not provide them an easy out in this instance. The Defendants rely almost exclusively on the holding in *Perry v. Judd* to support their position in this matter. 840 F. Supp. 2d 945 (E.D. Va. 2012) (Exhibit 2). That case involves challenges to the various Virginia ballot requirements. Under Virginia election laws, candidates seeking to participate in a Virginia presidential election are required to file petition signed by at least 10,000 (ten thousand) qualified voters, including at least 400 qualified voters from each congressional district by the primary filing deadline. (Va. Code Ann. 24.2-5459B).

In finding that laches barred the candidate's challenge to the regulatory scheme, the Fourth Circuit rested heavily on the fact that the candidate knew long before filing suit the requirements of Virginia's election laws because the requirements had been on the books for years. *Id.* Thus. The candidate's delay in seeking an injunction placed an unduly burden the state and upheld the district court's refusal to grant a preliminary injunction.

Reliance on this case as precedent in the matter at bar is entirely misplaced in the in light of COVID-19.  The Circuit Court of Richmond examined the exact same issue in the context of COVID-19 and found the signature requirements as applied to candidates unconstitutional.  *Faulkner v. Va. Dep't of Elections*, No. CL 20-1546 (Va. Cir. Ct. Mar. 25, 2020).  The Court explained that under normal circumstance a signature requirement in order for an individual to be placed on the ballot is a light burden, but found "the circumstance as they exist in the Commonwealth of Virginia and across the United States are not normal right now."  *Id*.  Citing the declaration of a state of emergency during to COVID-19 and the prohibition on non-essential gathering of more than 10 people in any open location at any time, the Court reasoned that under such circumstances and as applied to the potential candidate, the burden imposed by statute is significant, "as it precludes them from freely associating at the highest level."  *Id*.  The Court found a substantial likelihood of irreparable harm to the potential candidates constitutional rights if plaintiff's name was omitted from the ballot because of application of the code.  *Id.*  Then the Court Ordered a sixty-five percent (65%) reductions in signature required to be placed on the ballot for the election.  *Id.*

The unprecedented pandemic has completely reshaped how the citizens and the government behave in society.  The citizenry of West Virginia has never faced a wide-spread overt existential threat caused by leaving one's home.  As applied to Wilson, the burden created by the Executive Orders by Governor Justice and the Secretary of State in combination with strict adherence to signature requirement needed for ballot access has created an unconstitutional burden for independent candidates in this election cycle.

## The Eleventh Amendment Does Not Bar Wilson's Lawsuit

Under the Eleventh Amendment, federal courts may not entertain a private person's suit against the State unless the State (1) waives its sovereign immunity, (2) there is federal abrogation, or (3) the *Ex Parte Young* exception for prospective injunctive relief applies. *Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253 (2011); *Ex Parte Young*, 209 U.S. 123, 156-57 (1908). *Ex Parte Young* doctrine is a mechanism for challenging state policy or state action while avoiding Eleventh Amendment sovereign immunity. Citizens may sue state officials in their official capacities in federal court to obtain prospective relief from ongoing violations of federal law. *Id.* at 168.

## Governor Justice

In the shadow of COVID-19, the Governor, by issuing the Executive Order moving the Primary Election (Exhibit 2), Stay Home Order, and Safer at Home Order (Exhibit 3), legally redefined his role in the 2020 election cycle. The Governor has actively and affirmatively inserted himself in the election process. The Governor, almost daily at his press conferences, has repeatedly told West Virginians for months to stay home for their own safety. Governor Justice has, through the active use of his emergency powers, changed his role from merely "enforcing the law" to a ministerial role which makes him subject to the *Ex Parte Young* doctrine.

Furthermore, as applied to Wilson, the governor's Stay Home Order and Safer At Home Order in combination with the statutory signature requirement for independent candidates created an unconstitutional bar to Wilson as an independent candidate for governor. Wilson is seeking the prospective injunctive relief from the Governor, to issue another Executive Order relaxing the signature requirements under West Virginia law. To do

otherwise, would unconstitutionally discriminate against independent candidates in today's extraordinary circumstances.

### Secretary of State Warner

The Eleventh Amendment does not bar Wilson's lawsuit against Secretary of State Warner. This assertion was not contested by the Defendants in their brief when they concluded the Eleventh Amendment stopped Wilson's lawsuit as to the Governor. However, they did not argue the Eleventh Amendment barred Wilson's lawsuit against the Secretary.

The Secretary of State serves as the "chief election officer" of West Virginia and "oversees the election process throughout the state." *See* Duties of the Office of Secretary of State, *available at* https://sos.wv.gov/about/Pages/Duties-of-WVSOS.aspx (last visited Aug. 23, 2020); *see also* W. Va. Code § 3-1A-6 (a). As the chief election officer of West Virginia, the Secretary has a ministerial role and is a "state official" who is "clothed with some duty in regard to the enforcement of the laws of the state" pursuant to Section three of the West Virginia Code, the Secretary is not protected by sovereign immunity because, as the Supreme Court has held, "official capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989). Secretary Warner is subject to the *Ex Parte Young* doctrine and the Eleventh Amendment does not bar the Court from hearing this suit.

### Defendants' Actions Cannot Survive Strict Scrutiny Required by the *Anderson-Burdick* Test

The statute at issue, in light of executive action in this instance, as applied, cannot pass Constitutional muster. The Defendants incorrectly argue intermediate scrutiny applies in this case. Because of the First Amendment Constitutional issues involved, Strict Scrutiny is the proper standard.

West Virginia law allows independent candidates <u>only one</u> method of getting their name on the ballot in a general election, codified in § 3-5-23.  That statute implicates candidates' and voters' freedom of assembly protected by the First Amendment as it expressly applies to "groups of citizens" who wish to collectively nominate and petition the state to include an independent candidate for election to public office.  W.Va. Code §3-5-23(a).  The right to petition the government, the right to associate freely, and the right to express one's political views are fundamental rights protected by the First and Fourteenth Amendments. *Meyers v. Grant*, 486 U.S. 414, 421-22 (1988); *DeJonge v. Oregon*, 299 U.S. 353, 365 (1937).  In a challenge to state election laws, these interests must be weighed against the state's asserted interest in regulating elections.  *Burdick v. Takushi*, 504 U.S. 428 (1992); *Anderson v. Celebrezze*, 460 U.S. 780 (1983). The framework for this inquiry is referred to as the *Anderson-Burdick* test.

The Defendants improperly argue for intermediate scrutiny which weighs the burden imposed by the state against the precise interests put forward by state as justifications for the burden imposed, taking into consideration the extent to which those interests make it necessary to burden the plaintiff's rights. *Burdick,* 504 U.S. a 434*.* Defendants claim intermediate scrutiny is appropriate because the overall burdens imposed on Wilson have been moderate.

In support of their argument that intermediate scrutiny should apply, the Defendants erroneously rely on cases from other circuits that are easily distinguishable from the case at bar.  Most notably, the leading case cited by the Defendants is the Sixth Circuit decision in *Thompson v. DeWine*, 959 F.3d 804, 810 (6th Cir. May 26, 2020).  The Defendants neglect to mention that unlike West Virginia, the Stay at Home order issued in Ohio (Exhibit 5) in the face of the COVID-19 pandemic included an express exception for protected First Amended

speech. The Governor of West Virginia, however, did not include any such exception to his Executive Order. Had the Governor included some protection for First Amendment rights in either the Stay Home Order or the Safer at Home Order, the Defendants might be able to colorably assert the burdens placed upon Wilson and the electorate as a whole, were something less than a blanket prohibition to First Amendment speech, association, and expression rights.

Under *Anderson-Burdick* framework, when, as here, First Amendment rights are subjected to severe restrictions, the government action in question is subject to strict scrutiny and the government must narrowly tailor it's response to advance a compelling state interest. *Burdick,* 504 U.S. a 434. Neither the Governor nor the Secretary of State did anything to narrowly tailor their response to the compelling state interest in this case. The only offering made by the Secretary of State was telling Wilson that he could solicit signatures by emailing signature pages to perspective signers. That is not narrowly tailoring government action in this case.

On its face, it is unconstitutional to require in-person collection of signatures during the COVID-19 pandemic. Unfortunately, the state failed to offer any other realistic method of satisfying the statutory requirement. It must not be overlooked that under West Virginia law, canvassing and soliciting for signatures are two separate and different activities, both of which are expressly contemplated and authorized by W. Va. Code §3-5-23(b)-(d) and, therefore, integral to the nomination-certificate process. Canvasing a neighborhood, going from house to house to collect signatures, is not feasible or compatible with social distancing. State fairs, parades, and festivals, a historically prime place to gather signatures, have all been cancelled at the Governor's direction. Signature-gathers still cannot visit nursing homes at the Governor's direction. Sporting events, schools, public parks, indeed

any gathering of more than 25 people have been eradicated for the foreseeable future. Neither the Secretary of State nor the Governor took any action to provide a feasible manner of collecting the requisite signatures other than face-to-face in-person contact.

Similarly, soliciting signatures exclusively through social media or e-mail is an insufficient alternative to the broad freedom to canvas and solicit in-person.  While the defendant's notion of virtual signature gathering may be quaint, it reflects a clearly erroneous understanding of how massive signature collection efforts work, and how difficult it is to gather signatures even in ordinary times.  Soliciting signatures via social media or e-mail is unduly burdensome in a state where large segments of the population do not have access to the internet.  Under West Virginia's statutory scheme, independent candidates are entitled to canvass and to solicit to procure sufficient signatures to earn a spot on the ballot. Canvassing and soliciting signature are protected First Amendment activities.  The state offers no justification for restricting either of these activities that has any bearing on any of their stated interests.

Despite Defendants' claim that the restrictions of the Stay Home Order were lifted prior to the filing deadline, West Virginia is far from Open for Business.  The Safer at Home – The Comeback – Executive Order remains a phased initiative where only certain activities "re-opened" on a gradual basis in limited fashion, yet remain subject to additional safety guidelines and social distancing requirements.  Citizens are still strongly encouraged to remain at home for unessential activities or else face the very real risk to life and death.  To ignore the unprecedented, severe, and all-encompassing changes to daily life, colloquially deemed "the new normal", brought about by a world-wide pandemic invites disaster and ignores the obvious.  The new normal does do allow for door-to-door canvasing or in-person solicitation, or gathering in groups.

Neither the Secretary of State nor the Governor took any action to reduce or modify the number of signatures required to a feasible number that could reasonably be collected when person-to-person contact remains discouraged and gathering in large groups with of members of different households is precluded.

### Equal Protection Clause adds Greater Protections for Independent Candidates

Wilson is an independent candidate for governor. He is afforded greater protection under the Equal Protection clause than major party candidates.

There is no litmus test under the Equal Protection clause of the Fourteenth Amendment that applies to challenges to state election laws that restrict access to the ballot. *Storer v Brown*, 415 U.S. 725, 730 (1974). Rather, decision "is a matter of degree" that "involves a consideration of the facts and circumstances behind the law, the interests the state seeks to protect by placing restrictions on candidacy, and the nature of the interests of those who may be burdened by the restrictions. *Clements v Flashing*, 457 U.S. 957, 963 (1982) (citing *Williams v. Rhodes*, 393 U.S. 23, 30 (1968)).

Ballot access cases focus on the degree to which the challenged restrictions act as a mechanism to exclude certain classes of candidates from the electoral process. *Id.* at 964. One such class of candidates entitled to heightened equal protection scrutiny are candidates from small political parties and independent candidates. *Id.* At 964. Consequently, it has been held that the state must provide feasible means for independent candidates to appear on the general election ballot. *Storer,* 415 U.S. at 729. The First and Fourteenth Amendments, including the Equal Protection Clause, prohibit States from making it virtually impossible for any but the two major parties to achieve ballot positions for their candidates. *Clements*, 457 U.S. at 965.

The disparate treatment suffered by independent candidates during this election cycle is plain.  Both the Secretary of State and the Governor went to considerable lengths to protect the political interests of the major parties by moving the primary election date to June 9th, yet steadfastly refused to make any concession to protect the same interests of third party or independent candidates whose only manner of appearing on the ballot in the general election is through the nomination-certification process.  By refusing to relax or postpone the statutory requirements for independent candidates – candidates who were faced with the same threat to personal health and safety caused by COVID-19 that justified moving the primary election - the defendants virtually guaranteed a monopoly by the major parties and exclusion of independent candidates from the electoral process.

## Conclusion

Wilson prays this Court grant his motion for prospective injunctive relief in the form of a temporary injunction.

>
> STEPHEN "MARSHALL" WILSON
> By Counsel:
>
> _____
> John J. Balenovich, Esq.
> WV Bar No. 10179
> John J. Balenovich Law Offices, LC
> 3818 MacCorkle Ave., S.E.
> Charleston, WV 25304
> Telephone:  (304) 925-2100
> Fax:  (304) 925-2193
> john@wvlitigator.com
> Counsel for Plaintiff

Dated August 24, 2020

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 24th day of August, 2020, the foregoing has been served electronically on all parties represented by counsel using the Court's CM/ECF system.

_____
John J. Balenovich, Esq.
WV Bar No. 10179
John J. Balenovich Law Offices, LC
3818 MacCorkle Ave., S.E.
Charleston, WV 25304
Telephone: (304) 925-2100
Fax: (304) 925-2193
john@wvlitigator.com
Counsel for Plaintiff